## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JORGE L. DUCHE | ) | CASE NO. 3:22-cv-00088 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RYAN MCALLISTER, ET AL. | ) | MARCH 20, 2024 |
| *Defendants*. | ) | |

<u>MEMORANDUM OF DECISION</u>
**RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 32)**

Kari A. Dooley, United States District Judge:

This case arises out of the arrest of Plaintiff, Jorge L. Duche ("Plaintiff") by members of the Stamford Police Department on February 15, 2019. Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 against Officers Cooper, Ligi, Mercado, Rainone, Sylva, Velez, Vidal, McAllister, Becroft, Gelonesi, Landry, Pavia, Pennoyer and Rizzitello (collectively, "Defendants") and alleges that each used excessive force during and in relation to his arrest in violation of the Fourth Amendment to the U.S. Constitution. Pending before the Court is Defendants' motion for summary judgment, which Plaintiff has opposed, in part. For the reasons that follow, the motion is GRANTED as to defendants Cooper, Ligi, Mercado, Rainone, Sylva, Velez, Vidal, Rizzitello and McAllister, and DENIED as to defendants Becroft, Gelonesi, Landry, Pavia, and Pennoyer.

**Standard of Review**

The standard under which courts review motions for summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing

law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the inquiry being conducted by the court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250. As a result, the moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Wright*, 554 F.3d at 266; *accord Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted; internal quotation marks omitted). Nor will wholly implausible claims or bald assertions that are unsupported by evidence. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**Facts and Procedural History[1]**

The material events of February 15, 2019, began at approximately 12:30 p.m. when a loss prevention agent at the Lord & Taylor retail store requested assistance from defendant Officer McAllister in apprehending the Plaintiff, who was identified as having shoplifted from the store. *See* Defs.' Local Rule Statement ("Defs.' LRS"), ECF No. 32-19 at ¶¶ 2–7. Plaintiff resisted being taken into custody, a scuffle ensued, and the Plaintiff left the scene in his car.[2] *See id.* at ¶¶ 8–17. Officer McAllister had requested back up and then reported "officer down" and requested a "Code 3" response. *See id.* at ¶¶ 18–19. Plaintiff then led multiple units on an approximately two-mile chase through downtown Stamford. *See id.* at ¶¶ 22–31. Eventually, the chase ended after Plaintiff drove his car off of the road onto a grassy area, where it collided with multiple police vehicles, to

---

[1] This summary is comprised of facts taken from the parties' respective Local Rule 56(a) statements and derives principally from those facts about which there is no dispute.

[2] Plaintiff admits all material facts regarding his initial interaction with Officer McAllister to include that he "struggled with" Officer McAllister and that when McAllister tried to push Plaintiff against the nearest wall for leverage to handcuff him, Plaintiff pushed back, causing McAllister to fall backwards with Plaintiff landing on top of him. The struggle continued with both Officer McAllister and the loss prevention employee attempting to restrain Plaintiff. Ultimately, Plaintiff fled the scene after he pushed McAllister aside, causing him to fall and suffer a significant injury to his ankle. *See* Defs. LRS at ¶¶ 8–17; Pl.'s Local Rule Statement ("Pl.'s LRS"), ECF No. 34-1. at 8–17.

include a head on collision with the vehicle in which Officers Cooper and Vidal were travelling.[3] *See id.* at ¶¶ 32–38.

As will be discussed below, it is at this point in the narrative that the parties' positions diverge. Plaintiff asserts he was compliant with the officers who surrounded his car and ultimately removed him from the car. Defendants assert that Plaintiff was not compliant with their commands and that when they physically removed him from his car, he continued to resist arrest requiring the force used to subdue him and place him in handcuffs.

**Discussion**

*Section 1983: Excessive Force*

Plaintiff alleges that Defendants violated his Fourth Amendment rights, as incorporated against the states by the Fourteenth Amendment, *see Tenenbaum v. Williams*, 193 F.3d 581, 602 n.14 (2d Cir. 1999), by using excessive force on February 15, 2019. "The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Jamison v. Metz*, 541 F. App'x 15, 19 (2d Cir. 2013) (summary order) (internal quotation marks omitted). "A police officer violates the Fourth Amendment if the amount of force he uses in effectuating an arrest is objectively unreasonable in light of the facts and circumstances confronting the officer." *Lennox v. Miller*, 968 F.3d 150, 155 (2d Cir. 2020) (internal quotation marks and alterations omitted).

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at

---

[3] There are disputes about the extent to which Plaintiff ran red lights or stop signs or whether it was Plaintiff or the police who caused the vehicle collisions. The jury can assess these issues and determine what, if any, bearing it has on the ultimate question of excessive force. *See* Defs.' LRS at ¶¶ 25–26, 32; Pl.'s LRS at ¶¶ 25–26, 32.

stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). More specifically, "[a] determination of whether the force used was reasonable requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Miller*, 968 F.3d at 155 (internal quotation marks omitted). Importantly, "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). Thus, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. "In sum, the standard to be applied in determining whether the amount of force used exceeded the amount that was necessary in the particular circumstances is reasonableness **at the moment**." *Rogoz v. City of Hartford*, 796 F.3d 236, 247 (2d Cir. 2015) (emphasis added; internal quotation marks omitted).

"In light of the fact-specific nature of the inquiry on an excessive force claim, granting summary judgment against a plaintiff on such a claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Miller*, 968 F.3d at 155 (internal quotation marks and alterations omitted).

### Officers McAllister, Cooper, Ligi, Mercado, Rainone, Sylva, Velez, and Vidal

Plaintiff advances no argument that the initial encounter with Officer McAllister involved the use of excessive force. And the admitted facts regarding that encounter establish that Officer McAllister's use of force in attempting to arrest Plaintiff was objectively reasonable—albeit

insufficient to accomplish its purpose. *See* Defs.' LRS at ¶¶ 1–17; Pl.'s LRS at ¶¶ 1–17. The motion for summary judgment as to defendant McAllister is GRANTED.

Further, Plaintiff admitted that Officers Velez, Rainone, Mercado, Ligi and Sylva had no involvement in Plaintiff's physical apprehension, i.e., they did not use any force in affecting the arrest, let alone excessive force. *See* Defs.' LRS at ¶¶ 70–77; Pl.'s LRS at ¶¶ 70–77. On this basis, these Defendants seek summary judgment as to the claims against them. Consistent with these admissions, Plaintiff acknowledges their lack of involvement in his opposition to the motion for summary judgment, Pl.'s Opp'n, ECF No. 34 at 2 ("It appears that some of the defendants, although listed as participants, were not close enough to personally engage in beating the plaintiff."), and therefore only requests that the "the summary judgment motions of defendants Rizzitello, Alvarez, Gelonesi, Pavia and Becroft" be denied. *Id.* at 8. The motion for summary judgment as to Officers Velez, Rainone, Mercado, Ligi and Sylva is GRANTED.[4] *See Perez v. City of New York*, No. 20-CV-1359 (LJL), 2022 WL 4236338, at *9 (S.D.N.Y. Sept. 14, 2022) (Granting a defendant's motion for summary judgment on an excessive force claim based on the undisputed fact that "[he] did not use any excessive force and did not observe any officer use excessive force against [plaintiff].").

Officers Cooper and Vidal did not participate in Plaintiff's apprehension beyond driving one of the vehicles with which Plaintiff collided. *See* Defs.' LRS at ¶¶ 36–38; Pl.'s LRS at ¶¶ 36–38. Plaintiff advances no argument that this collision amounted to excessive force.[4] The motion for summary judgment as to Officers Cooper and Vidal is GRANTED.

---

[4] Plaintiff makes no argument that any of these defendants should remain in the case for their alleged failure to intervene in the use of excessive force by others.

[4] In fact, Plaintiff admitted that he collided head on with Officers Cooper and Vidal; that both officers were injured as a result; and that prior to the collision Plaintiff's vehicle was headed straight for Officer Rizzitello who was on foot in the grassy area onto which Plaintiff had driven. Defs.' LRS at ¶¶ 36–38; Defs.' LRS at ¶¶ 36–38.

**Officers Becroft, Gelonesi, Landry, Pavia, Pennoyer and Rizzitello**

The video and affidavits submitted reveal that multiple officers were involved in restraining and handcuffing Plaintiff. Preliminarily, the Court observes that the body worn camera video came from Defendant Officer Rizzitello. *See* Ex. 1 ("Rizzitello BWC") to Ex. Q to Defs.' Mot. for Summ. J. ("Defs.' MSJ"), ECF No. 32-17. Consistent with his affidavit, Officer Rizzitello's only physical engagement with Plaintiff was to briefly assist other officers in placing Plaintiff's left hand behind Plaintiff's back at the very end of the encounter. *See* Rizzitello BWC at 3:07. Officer Rizzitello made no other physical contact with Plaintiff, as is conclusively established by the footage. The footage further establishes that Officer Rizzitello's conduct was objectively reasonable based upon the totality of the circumstances he encountered when he first came upon Plaintiff. Indeed, "no reasonable factfinder could conclude that [Officer Rizzitello's] conduct was objectively unreasonable." *Miller*, 968 F.3d at 155.[5] The motion for summary judgment as to Officer Rizzitello is GRANTED

As to the remaining defendants, the following additional facts are material. Officer Pavia was a canine handler and worked with a canine officer named Pyro. *See* Defs.' LRS at 47. When officers surrounded Plaintiff's vehicle, he did not comply with their command to get out of the vehicle.[6] See *id.* at ¶ 43. Officers tried to break the window without success. *See id.* at ¶ 45. Officers

---

[5] Further, under a qualified immunity analysis, courts in this circuit have held that it is reasonable for officers to handcuff arrestees in a manner that may cause pain, even if the arrestee complies with the officer's efforts to arrest. *Swindell v. New York State Dep't of Env't Conservation*, 371 F. Supp. 2d 172, 181 (N.D.N.Y. 2005) (citing *Soares v. State of Connecticut Dep't of Enviromental Protection*, 8 F.3d 917, 922 (2d Cir.1993)).

[6] Plaintiff denies this assertion and offers his own testimony in this regard. Pl.'s LRS at ¶ 43; Duche Dep., Ex. 3 to Pl.'s Br. in Opp'n, ECF No. 34-4, at 45. However, the encounter is captured on body worn camera. The officers are clearly heard and seen yelling to Plaintiff to get out of the vehicle. And while they do not wait terribly long before opening the driver's door and forcibly removing him, there is no indication that he intended to comply with these commands. Further, Plaintiff pled guilty to, among other things, interfering with a police officer. On the date of his plea and sentencing, Plaintiff's defense lawyer explained "Even though the interfering charge is a lesser included offense of the assault, they were two separate incidents involving different officers. And that the basis of the interfering, it was recorded on video, is that he refused to get out of the car after he crashed the car. And that was the basis of the interfering charge." Ex. O ("Sentencing Transcript") to Defs.' MSJ, ECF No. 32-15, at 5–6. In

perceived Plaintiff's car engine to be revving. *See id.* at ¶ 44. Plaintiff denies that he was revving the engine. *See* Pl.'s LRS at ¶ 44. Officer Pavia opened the driver side door of Plaintiff's vehicle and commanded Pyro to apprehend Plaintiff. *See* Defs.' LRS at ¶¶ 49–50. Pyro first bit Plaintiff's leg but then bit and held Plaintiff's left arm. *See id.* at ¶¶ 51–52. Pavia, and others then physically removed Plaintiff from the vehicle. *See id.* at ¶ 55.

Multiple officers submitted affidavits in which they aver that Plaintiff continued to resist arrest; refused to be handcuffed; fought with officers who were trying to get his hands behind his back while he was prone, face down on the ground next to his car. *See, e.g.,* Becroft Aff., Ex. C to Defs.' MSJ, ECF No. 32-3, at 3; Pavia Aff., Ex. H to Defs.' MSJ, ECF No. 32-8 at 3–4; Pennoyer Aff., Ex. I to Defs.' MSJ, ECF No. 32-9, at 3. In the video, the officers are seen using physical force while attempting to handcuff the Plaintiff. *See* Rizzitello BWC at 2:17–3:28. The Officers yell, among other things, "stop resisting" or "put your hands behind your back." *See id.* at 2:40–2:58. The video does not, however, reveal what Plaintiff was doing. He is surrounded by officers and the video simply does not answer the question of whether he was resisting or not resisting the efforts to handcuff him. Plaintiff testified that he was not resisting the officers at all when they surrounded him and punched and kicked him. "They took me out of the car. They have my right hand already handcuffed in the back. They threw me on the floor and that's when they started kicking me, punching me." Duche Dep., Ex. 3 to Pl.'s Br. in Opp'n, ECF No. 34-4, at 45–46. He continues: "I'm already—my right hand was already handcuffed in the back. … The dog already bit me. The constantly stomping, stomping on this hand. Stomping on it. That's how they broke—they broke my middle finger and they broke this area on my phone right here. The broke it because they were stomping on it. … [T]his cop… [gesturing] he's multiple time he hits me. He's

---

combination, the video and his guilty plea defeat any claim that there is a genuine issue of material fact as to whether he complied with the officers' commands to get out of the vehicle.

constantly hitting me with his feet, with his boot in my face, in my face he hit me. … And then… Laudry [*sic*] …. threw himself on the floor and he grabbed my left … foot and he starts going like this, playing with it trying to stomp it. And then he goes to my right ankle and he breaks my ankle with his own hands. And then he bear hugs me. He chokes me." *Id.* at 48.

The Court cannot, on this record, determine the objective reasonableness of the arresting officers' use of force as there is a genuine issue of material fact as to both the nature of the force used as well as whether such force was necessary. Plaintiff testified that he was already fully subdued before the force was used. And neither the video nor the officers' affidavits conclusively establish otherwise. Nor can the Court, on the present record, parse out the individual role that each of the arresting officers had in subduing or apprehending Plaintiff. Accordingly, as to defendants Pavia, Landry, Becroft, Pennoyer, and Gelonesi the motion for summary judgment is DENIED.

**Qualified Immunity**

Alternatively, these arresting officers argue that they are entitled to qualified immunity.

"[Q]ualified immunity protects government officials from suit if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "When a defendant invokes qualified immunity to support a motion for summary judgment, courts engage in a two-part inquiry: whether the facts shown 'make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815–16 (2009). "To be clearly established, a right must be sufficiently clear that every reasonable official

would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 135 S. Ct. 2042, 2044 (2015). "Rights must be clearly established in a 'particularized' sense, rather than at a high level of generality, *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017), and while "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

"Therefore, an official is entitled to qualified immunity if, considering the law that was clearly established at the time, the official's conduct was 'objectively legally reasonable.'" *Nazario v. Thibeault*, No. 3:21-cv-216-VLB, 2022 WL 2358504, at *8 (D. Conn. June 30, 2022) (quoting *Taravella*, 599 F.3d at 133). "The objective reasonableness of an official's conduct 'is a mixed question of law and fact.'" *Id.* "At the summary judgment stage, while a conclusion that an official's conduct 'was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual question must be resolved by the factfinder.'" *Id.*

Considering these standards, it is manifest that the merits of Plaintiff's claim and the question of qualified immunity overlap significantly, as both require an assessment of the objective reasonableness of Defendant's conduct. *Diaz v. City of Hartford Police Dep't,* No. 3:18-CV-01113 (KAD), 2021 WL 1222187, at *5 (D. Conn. Mar. 31, 2021). Indeed, in some excessive force cases, the qualified immunity and Fourth Amendment issues converge on one question: "Whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed was lawful." *Cowan ex rel. Est. of Cooper v. Breen*, 352 F.3d 756, 764 n.7 (2d Cir. 2003).

It bears repeating that summary judgment is not appropriate in this highly fact specific context unless "no reasonable juror could conclude that [Defendant's] conduct was objectively

unreasonable." *Miller*, 968 F.3d at 155. And further, that "while a conclusion that an official's conduct 'was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual question must be resolved by the factfinder.'" *Nazario,* 2022 WL 2358504, at *8.

The Court has determined above that there are issues of fact as to both the nature of the force used and whether the use of such force was reasonable under the circumstances—the two core inquiries in any excessive force claim. These issues will in turn depend on factual questions such as: was Plaintiff kicked or "stomped;" was Plaintiff's ankle broken by one officer's deliberate conduct; was Plaintiff compliant with officers after he was removed from his vehicle; did the officers reasonably believe he might have a weapon; did Plaintiff actively resist the officers' efforts to physically restrain him with handcuffs. Officers' affidavits stating that Plaintiff continued to resist and refused to be handcuffed are contested by Plaintiff's deposition testimony, as are the officers' descriptions of the type of force employed. Officer Rizzitello's body worn camera footage, though it conveys the general chaotic nature of the scene, does not resolve these factual disputes. If Plaintiff's testimony is credited by a factfinder, a reasonable jury could conclude that officers' use of force after Plaintiff was removed from his vehicle was unreasonable, and therefore violated Plaintiff's clearly established rights. *See Cox v. Fischer*, 248 F. Supp. 3d 471, 482 (S.D.N.Y. 2017) (holding that the use of "substantial force" against a defendant, "absent any physical resistance or attempt to flee, violated clearly established law." (citing *Brown v. City of New York*, 798 F.3d 94, 102 (2d Cir. 2015)).

**Conclusion**

For the forgoing reasons, Defendants' motion for summary judgment, **[ECF No. 32]** is **GRANTED** as to defendants Cooper, Ligi, Mercado, Rainone, Sylva, Velez, Vidal, Rizzitello, and McAllister and **DENIED** as to defendants Becroft, Gelonesi, Landry, Pavia, and Pennoyer.

The Clerk of the Court is directed to terminate defendants Cooper, Ligi, Mercado, Rainone, Sylva, Velez, Vidal, Rizzitello, and McAllister.

**SO ORDERED** at Bridgeport, Connecticut, this 20th day of March 2024.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE